1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MICHAEL GAMBLE and CHARLOTTE
GAMBLE, husband and wife,

                    Plaintiffs,

        vs.

THE BOEING COMPANY EMPLOYEE
RETIREMENT PLAN, THE BOEING
COMPANY EMPLOYEE BENEFITS
PLAN COMMITTEE,

                    Defendants.

No. C10-1618 RSL

ORDER DENYING
CROSS-MOTIONS FOR
SUMMARY JUDGMENT

This matter comes before the Court on the parties' cross motions for summary

judgment (Dkt. ## 43, 46). Defendants ask the Court to find that the Boeing Company

Employee Benefits Plan Committee (the "Committee") did not abuse its discretion when

it denied Plaintiff Michael Gamble's request to "merge" his two work periods to increase

his pension benefit. Plaintiffs ask the Court to find that Defendants are equitably

estopped from denying Mr. Gamble's request. The Court DENIES both motions.

## I. BACKGROUND

This case concerns a dispute over retirement benefits. Most of the facts are

undisputed. Michael Gamble started working for the Boeing Company in 1973. Dkt. #

45 (Administrative Record ("AR") at 30). He soon obtained a vested interest in the

ORDER DENYING CROSS-MOTIONS FOR SUMMARY JUDGMENT - 1

Boeing Company Employee Retirement Plan (the "Plan") and continued to accrue pension benefits under the Plan until he elected to take early retirement on April 1, 1991, to become the chief executive officer of Power Spectra, Inc.—an independent company in which Boeing was heavily invested. Per the Plan, he began receiving monthly pension benefits of $1,744.70 at that time. Five years later he went to work for ArgoSystems, Inc., a Boeing subsidiary that was not a Plan participant.

In April 1998, Mr. Gamble returned to work for Boeing. He remained there until he retired for a second time on January 1, 2006. At that point, Boeing reinstated his prior pension payment (the "BCERP benefit") and also began paying him an additional "MDC Heritage" pension benefit of $131.71[1] and a "Pension Value Plan" benefit of $948.46.[2] Id. at 11. Mr. Gamble did not agree with the calculation of his BCERP benefit. He sent Boeing a letter arguing that he had only left Boeing in 1991 to protect Boeing's interest in Power Spectra's success and that he had also furthered Boeing's interests through his work at ArgoSystems. Id. at 5. He asked that these periods thus "be considered as constructive Boeing service, for retirement purposes," and that his "break in service" be reconsidered. Id. at 5–6.

Mr. Gamble subsequently received a letter dated April 6, 2006, from Catherine Steiner, a Boeing employee benefit specialist. Id. at 3–4. Ms. Steiner wrote that the Plan terms had always strictly limited the accrual of the "credited service" benefits Mr. Gamble sought to Boeing employees and employees of those subsidiaries that had adopted the Plan, and that neither Power Spectra nor ArgoSystems satisfied those requirements. Id. She told him that because "the Plan must be administered in strict

---

[1] Plaintiff accrued this benefit for his work from April 1998 to December 31, 1998.

[2] This was the benefit that accrued from January 1, 1999, to December 31, 2005.

ORDER DENYING CROSS-MOTIONS FOR SUMMARY JUDGMENT - 2

adherence to the legal text and consistently applied for all participants," she could not make an exception for him, but that he could appeal this denial to the Committee. Id.

Mr. Gamble took her up on that option. On June 8, 2006, he wrote to the Committee to appeal Ms. Steiner's denial. Id. at 8. He reiterated his belief that all of his work had been in the best interest of Boeing and asserted that, prior to making his decision to leave Boeing in 1991, he had met with "Mr. Robert Blankenship," an individual he identified as the "Kent manager of retirement operations for Boeing" to discuss the ramifications of his decision. He wrote that Mr. Blankenship had led him "to believe that Boeing policy provided that if [he] ever rejoined the payroll, there would be no "break in service" for retirement purposes. Id. Mr. Gamble also offered to repay those retirement benefits he had already received if that would aid his request. Id.

The Committee acknowledged receipt of Mr. Gambles appeal within a week. Id. at 1. Pursuant to the Plan, it had 60 days in which to notify Mr. Gamble of its decision. Id. at 153; see id. at 119 ¶ 12.6. In early August, it notified him that it was invoking the extension provisions of the Plan to allow it an addition 60 days. Mr. Gamble heard nothing more until May 2007, when he received a letter from Boeing dated October 10, 2006, informing him that his appeal had been denied. Dkt. # 47-2 at 17–18. Attached to that letter was a purported Committee decision dated August 29, 2006. Id. at 19–25; Dkt. # 45 (AR at 29–35). The Committee decision was not signed by any Committee members. Dkt. # 45 (AR at 32).

Mr. Gamble filed suit on October 6, 2010. He alleged that the Plan and the Committee had improperly denied his benefits under ERISA by administering his claims in an arbitrary and capricious manner. Dkt. # 1 at ¶ 4.4. He further alleged that they had

1  "failed to honor the terms of the Plan as described by Mr. Blankenship."  Id. at ¶ 4.5; see

2  id. at ¶ 4.2.[3]

3  ## II. DISCUSSION

4      The parties raise two general issues:  First, whether the Committee abused its

5  discretion under the terms of the Plan when it denied Mr. Gamble's request to merge his

6  two periods of employment together for purposes of calculating his pension benefit.

7  Dkt. # 43.  And, second, whether Defendants are equitably estopped from denying Mr.

8  Gamble the benefits allegedly promised him at the time of his first retirement.  Dkt. # 46.

9      Because these issues come before the Court on dueling motions for summary

10  judgment, the Court may enter judgment as a matter of law only if it is satisfied that

11  there is no genuine issue of material fact to preclude judgment as a matter of law.  Fed.

12  R. Civ. P. 56(c).  The moving party as to each issue bears the initial burden of informing

13  the Court of the basis for summary judgment.  Celotex Corp. v. Catrett, 477 U.S. 317,

14  323 (1986).  It must prove each and every element of its claims or defenses such that "no

15  reasonable jury could find otherwise."  Eli Lilly & Co. v. Barr Labs., Inc., 251 F.3d 955,

16  962 (Fed. Cir. 2001).  In doing so, it is entitled to rely on nothing more than the pleading

17  themselves.  Celotex, 477 U.S. at 322–24.  Only once the moving party makes that initial

18  showing does the burden shifts to the nonmoving party to show by affidavits,

19  depositions, answers to interrogatories, admissions, or other evidence that summary

20  judgment is not warranted because a genuine issue of material fact exists.  Id. at 324.

21      Notably, to be material, the fact must be one that bears on the outcome of the

22  case.  A genuine issue exists only if the evidence is such that a reasonable trier of fact

23  could resolve the dispute in favor of the nonmoving party.  Anderson v. Liberty Lobby,

24

25      [3] Plaintiffs also allege that they relied on the representations of Mr. Mimes.  However, because those representations were made in 2005 they are irrelevant to any estoppel claim.

26  ORDER DENYING CROSS-MOTIONS FOR SUMMARY JUDGMENT - 4

1   Inc., 477 U.S. 242, 249 (1986).  "If the evidence is merely colorable . . . or is not

2   significantly probative . . . summary judgment may be granted."  Id. at 249–50.  In

3   reviewing the evidence "the court must draw all reasonable inferences in favor of the

4   nonmoving party, and it may not make credibility determinations or weigh the

5   evidence."  Reeves v. Sanderson Plumbing Prods. Inc., 530 U.S. 133, 150 (2000).

6          With these standards in mind, the Court turns first to the issue of Mr. Gamble's

7   entitlement to greater benefits under the Plan.  It then considers whether he might be

8   entitled to any benefits as a result of the alleged representations of Mr. Blankenship.

9   **A. Entitlement Under the Plan**

10          As a threshold matter, the Court notes that the parties disagree as to the scope of

11   this Court's review.  Ordinarily, "[w]here, as here, an ERISA plan vests the

12   administrator with discretionary authority to determine benefit eligibility,[4] the district

13   court reviews the administrator's determinations for abuse of discretion" and "review[s]

14   only the evidence presented to the [plan] trustees.'"  Banuelos v. Constr. Laborers' Trust

15   Funds for S. Cal., 382 F.3d 897, 904 (9th Cir. 2004) (footnote added).

16          However, Plaintiffs contend that Defendants' delay in notifying Mr. Gamble of its

17   decision and the fact that its purported decision was unsigned require the Court to

18   conclude that, as a legal matter, the Committee failed to exercise its discretion.  See

19   Jebian v. Hewlett–Packard Co. Emp. Benefits Org. Income Prot. Plan, 349 F.3d 1098,

20   1106 (9th Cir. 2003) (holding that an administrator failed to exercise its discretion when

21   it did not make a benefits decision within the 60 days specified by the terms of the plan,

22

23          [4] It is undisputed that the Plan was established under ERISA and confers "complete
24   control of the administration of the Plan" on the Committee, providing it "the power to interpret
     the Plan, apply its discretion, and determine all questions that might arise hereunder, including
25   . . . the amount of benefit to which any Participant or Beneficiary may become entitled . . .
     under the provisions of the Plan . . . ."  Dkt. # 45 (AR at 118) (emphasis added).

26   ORDER DENYING CROSS-MOTIONS FOR SUMMARY JUDGMENT - 5

resulting in an automatic denial, and the applicable regulation, so that the ultimate

decision rendered was "undeserving of deference"). Defendants disagree. They contend

that the procedural irregularities at issue here were not "so substantial as to alter the

standard of review." Abatie v. Alta Health & Life Ins. Co., 458 F.3d 955, 971 (9th Cir.

2006) (en banc) (emphasis added).[5]

Ultimately, the Court concludes that it need not reach the question. Even

assuming an abuse of discretion standard applies, the Court is left with a firm and

definite conviction that the Committee erred in denying Mr. Gamble's claim for greater

benefits—at least in part. Again, it is undisputed that, following Mr. Gamble's second

retirement from Boeing, Defendants did not recalculate his prior BCERP benefit in any

way. They simply reinstated his benefit in the same amount that he had been receiving

---

[5] As the Court explained its prior Order (Dkt. # 33), even where an abuse of discretion standard applies, a district court may consider "evidence outside the administrative record" to "determine if a plan administrator's decision was affected by a conflict of interest." Id. (citing Tremain v. Bell Indus., Inc., 196 F.3d 970, 976–77 (9th Cir. 1999)). As explained in Abatie:

> The level of skepticism with which a court views a conflicted administrator's decision may be low if a structural conflict of interest is unaccompanied, for example, by any evidence of malice, of self-dealing, or of a parsimonious claims-granting history. A court may weigh a conflict more heavily if, for example, the administrator provides inconsistent reasons for denial; fails adequately to investigate a claim or ask the plaintiff for necessary evidence; fails to credit a claimant's reliable evidence; or has repeatedly denied benefits to deserving participants by interpreting plan terms incorrectly or by making decisions against the weight of evidence in the record.

458 F.3d at 968–69 (citations omitted).

Moreover, even if the Court were to determine that the procedural errors present in this case do not rise to the level of a failure to exercise discretion, cf. Jebian, 349 F.3d at 1106, that "does not mean . . . that procedural irregularities are irrelevant to the court's analysis," Abatie, 458 F.3d at 972. Instead, "[a] procedural irregularity, like a conflict of interest, is a matter to be weighed in deciding whether an administrator's decision was an abuse of discretion." Id. Thus, courts faced with even minor procedural irregularities "may have to consider evidence outside the administrative record" in order to "recreate what the administrative record would have been had the procedure been correct." Id.

before being rehired and added to that benefit his newly accrued MDC Heritage and Pension Value Plan benefits.  Dkt. # 45 (AR at 11).  Mr. Gamble disagreed with this decision, arguing that his BCERP benefit should be calculated to include his second stint of employment.  Id. at 2.  Accordingly, he requested that the Committee "reconsider merging all of [his] service together, in order to provide a larger benefit than [his] 'broken service' [wa]s currently providing."  Id.

Considering the evidence in a light most favorable to Defendants, the Court finds that the Committee exercised its discretion to deny that request.  The problem is that it should not have.  The Plan itself provides:

> If a Participant retires directly from service with the Company on a Retirement Date, has Retirement Income suspended during reemployment under this Section 5.8 and thereafter becomes eligible for a benefit attributable to service during reemployment, the Participant's original Retirement Income payment will be increased to reflect [6]the difference between any early retirement reduction at the Participant's original Retirement Date and a revised early retirement reduction based on the Participant's age at original Retirement Date advanced by the number of months that Retirement Income was suspended.

Id. at 101 (Section 5.8 Reemployment After Retirement) (emphasis added); accord Dkt. # 47 at 29 (1990 edition).  And Mr. Gamble fulfills each requirement:  (1) he retired on a Retirement Date, (2) had his Retirement Income suspended beginning October 1996 when he became employed by ArgoSystems, a Boeing subsidiary,[7] and (3) thereafter accrued "a benefit attributable to service during reemployment"—his "Pension Value Plan" benefit of $948.46.  Dkt. # 45 (AR at 11).

---

[6] Dkt. # 47 at 55–56.

[7] Compare Dkt. # 45 (AR at 30) (reflecting that Mr. Gamble began working for ArgoSystems, a Boeing subsidiary, in October 1996 and ceased working for Boeing on January 1, 2006—a period of 74 months), with Dkt. # 47-2 at 13 (letter from Boeing informing Mr. Gamble that his pension benefits should have been suspended upon his employment at ArgoSystems and that his future monthly payments would be reduced accordingly).

As a result, per the terms of the Plan itself, Defendants should have recalculated Mr. Gamble's BCERP benefit upon his second retirement to reduce the early retirement penalty imposed in 1991.  Advancing Mr. Gamble's "age at original Retirement Date . . . by the number of months that Retirement Income was suspended," id. at 101, results in an approximate retirement age of 64—nine years greater than his age at the time of his first retirement in April 1991.  Under the facts and argument currently before the Court, this failure to accurately calculate Mr. Gamble's benefits in accordance with the Plan is a violation of ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B).[8]  Accordingly, the Court DENIES Defendants' request for summary judgment.

**B. Equitable Estoppel**

Next, the Court considers Plaintiffs' request that Defendants should be equitably estopped as a matter of law from applying the Plan against Mr. Gamble in a manner different from that described by Mr. Blankenship.[9]  Defendants raise four arguments in response:  (1) that Plaintiffs failed to allege an equitable estoppel claim; (2) that Plaintiffs' estoppel based claim is no different than their claim under § 502(a)(1)(B) and is therefore preempted; (3) that Plaintiffs cannot seek monetary damages under an ERISA equity theory; and (4) that Plaintiffs have failed to demonstrate that they

---

[8]  The Court recognizes that Plaintiffs did not specifically raise this argument in response to Defendants' motion, relying instead on their equitable estoppel contention.  See Dkt. # 49.  Nevertheless, while "a district court has no independent duty 'to scour the record in search of a genuine issue of triable fact,' and may 'rely on the nonmoving party to identify with reasonable particularity the evidence that precludes summary judgment,'" Simmons v. Navajo County, Ariz., 609 F.3d 1011, 1017 (9th Cir. 2010), the Court cannot ignore that the evidence clearly precludes it from granting Defendants the judgment they seek.  The Court will consider the genesis of the argument, however, in the event that a future request for attorney's fees is made.

[9]  Following oral argument, it is clear that Plaintiffs' estoppel claim seeks something more than that to which he entitled to under Section 5.8(c) of the Plan itself.

indisputably satisfy the five elements necessary to demonstrate equitable estoppel in the ERISA context, Spink v. Lockheed Corp., 125 F.3d 1257, 1262 (9th Cir. 1997).  The Court considers each.

First, the Court finds that Plaintiffs sufficiently pleaded an equitable estoppel claim.  Though Defendants are correct that the words "equitable estoppel" do not appear anywhere in Plaintiffs Complaint, that is immaterial.  "Equitable estoppel" is a legal conclusion, and, as the Supreme Court has explained, the purpose of a Complaint is not to set forth "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'"  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 557, 557 (2007)).  It is to set forth sufficient "factual content [to] allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.  And Plaintiffs' Complaint makes abundantly clear that at least one basis for their claim was Defendants' "fail[ure] to honor the terms of the Plan as described by Mr. Blankenship."  E.g., Dkt. # 1 at ¶¶ 4.2, 4.5.  Nothing more is required.

Second, Plaintiffs' equity-based claim is not foreclosed by § 502(a)(1)(B).  As explained by the Supreme Court's decision in CIGNA Corp. v. Amara, 131 S. Ct. 1866 (2011), the two provisions address different concerns.  Section 502(a)(1)(B) is intended to provide plan participants with a cause of action "to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."  See id. at 1876–77 (emphasis added).  According, it applies only to claims based on the terms of Plan itself.  Id. at 1878 ("[W]e conclude that the summary documents, important as they are, provide communication with beneficiaries about the plan, but that their statements do not themselves constitute the terms of the plan for purposes of § 502(a)(1)(B).").

In contrast, the equity provision of § 502(a)(3) is not so limited.  Plaintiffs may rely on that provision to bring traditional equity based claims, including claims for

ORDER DENYING CROSS-MOTIONS FOR SUMMARY JUDGMENT - 9

equitable estoppel, premised on extrinsic materials or representations <u>about</u> the Plan terms. <u>Id.</u> at 1879–80 ("First, what the District Court did here may be regarded as the reformation of the terms of the plan, in order to remedy the false or misleading information CIGNA provided. . . . This aspect of the remedy resembles estoppel, a traditional equitable remedy."). That is precisely the basis of the claim here. Plaintiffs' claim that they are entitled to greater benefits as a result of Mr. Blankenship's representations, not the terms of the Plan itself. As a result, Plaintiffs' equity based claim is not preempted by § 502(a)(1)(B). <u>Id.</u> at 1878–80.

Third, the fact that Plaintiffs ultimately seek monetary damages does not preclude their equity-based claim. Admittedly, some Ninth Circuit precedent suggests to the contrary. <u>See</u> <u>Watkins v. Westinghouse Hanford Co.</u>, 12 F.3d 1517, 1527–28 (9th Cir. 1993) (relying on <u>Mertens v. Hewitt Assocs.</u>, 508 U.S. 248, 255–56 (1993)). In <u>CIGNA</u>, however, the Court held that § 502(a)(3) was not so constrained, explaining:

> the District Court injunctions require the plan administrator to pay to already retired beneficiaries money owed them under the plan as reformed. <u>But the fact that this relief takes the form of a money payment does not remove it from the category of traditionally equitable relief. Equity courts possessed the power to provide relief in the form of monetary "compensation" for a loss resulting from a trustee's breach of duty, or to prevent the trustee's unjust enrichment</u>.

<u>Id.</u> at 1880 (emphasis added) (finding "misplaced" the district court's "concern" for its authority post-<u>Mertens</u> to award equitable relief that results as a practical matter in the receipt of money damages). To the extent <u>Watkins</u> conflicts with <u>CIGNA</u>, it has clearly been abrogated.

Finally, the Court considers whether Plaintiffs have conclusively established each of the five elements necessary to support an equitable estoppel claim: (1) "a material misrepresentation," (2) "reasonable and detrimental reliance upon the representation,"

ORDER DENYING CROSS-MOTIONS FOR SUMMARY JUDGMENT - 10

(3) "extraordinary circumstances," (4) "that the provisions of the plan at issue were ambiguous such that reasonable persons could disagree as to their meaning or effect, and finally," (5) "that representations were made involving an oral interpretation of the plan." Spink, 125 F.3d at 1262; see Greany v. W. Farm Bureau Life Ins. Co., 973 F.2d 812, 821 (9th Cir. 1992) (explaining that the first three elements are simply restatements of the four federal common law elements of equitable estoppel: "(1) the party to be estopped must know the facts; (2) he must intend that his conduct shall be acted on or must so act that the party asserting the estoppel has a right to believe it is so intended; (3) the latter must be ignorant of the true facts; and (4) he must rely on the former's conduct to his injury" (citation omitted)).  The Court finds that they have not.[10]

The sticking point for the Court is the second element:  "reasonable and detrimental reliance upon the representation." Spink, 125 F.3d at 1262.  Again, Mr. Gamble's position is that he left Boeing in 1991 based on Mr. Blankenship's oral interpretation of the Plan provisions.  Specifically, that "Mr. Blankenship told me that so long as I came to back to work for Boeing, the time at PowerSpectra would not be considered a 'break in service' and when I ultimately retired, my retirement benefits for all of the years at Boeing would be based on my 'highest average rate over any 60 consecutive-month period during your last 120 months of service," as provided in the [1990 version of the] Plan at p.11."  Dkt. # 47 at ¶ 9 (referencing Dkt. # 47 at 28).

---

[10]  Notably, the Court disagrees with Defendants' contention that the Court should also consider Plaintiffs' equitable estoppel claim under an abuse of discretion lens.  The Plan provides the Committee with "the power to interpret the Plan, apply its discretion, and determine all questions that might arise hereunder, including . . . the amount of benefit to which any Participant or Beneficiary may become entitled . . . under the provisions of the Plan . . . ." Dkt. # 45 (AR at 118) (emphasis added).  As explained, this claim is not based on the provisions of the Plan; thus, there is no cause for deference.

The difficulty with Mr. Gamble's position, however, is that this representation ultimately proved immaterial. It is undisputed that the Plan was itself replaced on January 1, 1999, with the Pension Value Plan. And it is further undisputed that, as a result, all Boeing employee ceased to accrue BCREP benefits on December 31, 1998. Thus, Mr. Gamble lost nothing based on his reliance. Like all other Boeing employees, his BCREP benefits ceased to accrue on January 1, 1999—just as they would have had he never left. In short, the termination of the Plan eliminated any basis for calculating benefits in the manner Mr. Gamble seeks and thus negates any possibility for detriment.

In sum, the Court finds that Plaintiffs are legally entitled to bring their equitable estoppel claim. However, the Court finds that they have failed to demonstrate even prima facie entitlement to the relief they seek.[11]

### III. CONCLUSION

For all of the foregoing reasons, the Court DENIES each party's motion for summary judgment (Dkt. ## 43, 46). Under the evidence currently before the Court, it appears that Defendants miscalculated Mr. Gamble's BCERP benefit under the plain terms of the Plan and that Plaintiffs cannot prevail on their estoppel claim. Ideally, the Court ruling's will be the impetus for a mutually agreeable resolution to this dispute. If not, the Court would ask the parties to be circumspect in their next round of motions, tailoring their arguments to the Court's rulings in this Order.

DATED this 27th day of April, 2012.

*MW S Lasnik*

Robert S. Lasnik
United States District Judge

_____

[11] Accordingly, the Court denies Plaintiffs' request for attorney's fees.

ORDER DENYING CROSS-MOTIONS FOR SUMMARY JUDGMENT - 12